IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **TRAVELERS INDEMNITY COMPANY** : | |
|     **Plaintiff,** : | |
| : | CIVIL ACTION NO.  08-cv-2583 |
| **v.** : | |
| : | |
| **STENGEL ET AL.** : | |
|     **Defendants.** : | |

**MEMORANDUM**

**Tucker, J.**                                                                                                     **December \_\_\_, 2011**

       Presently before this Court is Defendants' Ledgewood Law Firm and Kevin Berry, Esq. Motion for Summary Judgment (Doc. 67), Defendant Stengel's Motion for Summary Judgment (Doc. 68), Plaintiff's Responses (Docs. 72, 73), Defendant Stengel's Reply (Doc. 78), Plaintiff's Sur-Reply (Doc. 81), Defendants' Ledgewood Law Firm and Kevin Berry, Esq. Reply (Doc. 82), Defendants' Supplemental Replies (Docs. 88, 89), and the oral arguments presented before the Court on Tuesday, July 19, 2011.  Upon consideration of the parties' motions with exhibits and declarations*,* this Court will grant Defendants' Motions for Summary Judgment.

                                        **I.**     **BACKGROUND**

       This case arises out of an underlying legal malpractice suit.  Plaintiff, Travelers Indemnity Company ("Travelers"), as subrogee of Daniel de Luca and Nelson Levine, brings this action for contribution under Pa. C.S.A. § 8321 *et seq*. against Defendants Robert M. Stengel, Kevin Berry, and The Ledgewood Law Firm, P.C. ("Defendants").  Plaintiff is an insurance

1

company incorporated in Connecticut, and licensed to do business in Pennsylvania.  Defendants Stengel and Berry are both licensed attorneys in Pennsylvania.  Defendant Ledgewood Law Firm, P.C. is a Pennsylvania professional corporation, and is the employer of Defendant Berry.  (Compl. ¶¶ 1-9.)

Representation provided by Defendants Stengel and Berry to Craig and Mary Jo Sanford (the "Sanfords") constitute the subject of the legal malpractice suit underlying this action.  Defendant Stengel represented the Sanfords in 1998, advising them about a zoning appeal for their property located in Monroeville Borough, Falls Township, Bucks County.  Defendant Stengel, on behalf of the Sanfords, drafted a federal RICO claim against Falls Township, the Township Solicitor, the Zoning Hearing Board, and members of the Township's Board of Supervisors.  The Sanfords filed the complaint *pro se* in this Court.

Immediately thereafter, in 1999, the Sanfords retained Defendants Berry and the Ledgewood Law Firm, P.C. to file an amended complaint in the RICO action (the "RICO suit"), with the amended complaint updated to include substantive due process claims.  In September 2000, the amended complaint was dismissed.  Thereafter, Defendants Berry and the Ledgewood Law Firm, P.C. filed an appeal of the dismissal to the United States Court of Appeals for the Third Circuit.  In December 2001, the Third Circuit affirmed the dismissal of the federal RICO action.  (Compl. ¶¶ 21-31.)

In November 2001, two of the members of the Township's Board of Supervisors (the "Supervisors"), who were defendants in the federal RICO suit, filed a Dragonetti action against the Sanfords, alleging the Sanfords' wrongful use of civil proceedings in filing the RICO suit.  On November 20, 2001, Shelby Mutual Insurance Company, the Sanfords' homeowner's

insurance company, retained attorney Daniel de Luca and Nelson, Levine, de Luca and Horst, LLP (the "Nelson firm") to defend the Sanfords in the Dragonetti Act proceedings. De Luca failed to file an answer to the Supervisors' complaint. Additionally, despite receiving a ten-day notice of the Supervisors' intent to file for default judgment, de Luca failed to file for an extension of time to file an answer on the Sanfords' behalf. Following entry of default judgment in 2002, in a 2007 bench trial in this matter, held by the Court of Common Pleas of Bucks County, a verdict against the Sanfords and in favor of the Supervisors was entered in the total amount of $3,030,000. (Compl. ¶¶ 32-35.)

In February 2008, the Sanfords brought a legal professional liability action against attorney de Luca and the Nelson firm in the Court of Common Pleas of Bucks County. The Sanfords alleged that these attorneys were negligent in defending the Sanfords in the Dragonetti suit, which resulted in the $3,030,000 verdict.

In May 2008, Plaintiff Travelers Indemnity ("Travelers"), on behalf of its insureds attorney de Luca and the Nelson law firm, settled the claims of the Sanfords against attorney de Luca, the Nelson firm, and the Supervisors, and paid $1,500,000 to the Supervisors to resolve both the Dragonetti and legal malpractice lawsuits. In addition, Travelers obtained a settlement and release from the Sanfords regarding their claims against Stengel, Berry, and the Ledgewood firm. The settlement among Travelers Indemnity, attorney de Luca, the Nelson firm, the Sanfords, and the Supervisors, was a joint tortfeasor release that extinguished the liability of the defendants in this action from liability to the Sanfords, but otherwise preserved this claim on behalf of Plaintiff Travelers Indemnity and its subrogees. (Compl. ¶¶ 36-39.)

In June 2008, Plaintiff filed this suit in the United States District Court of the Eastern District of Pennsylvania against the Defendants for contribution in the amount of Defendants' "proportionate share of the liability for the conduct resulting in the judgment against the Sanfords and in favor of the supervisors." (Compl. ¶ 52.) Plaintiff, in settling the case involving de Luca, the Nelson firm, the Sanfords, and the Supervisors, allegedly paid "more than their proportional share of the liability." (Compl. ¶¶ 36, 51 52.) Plaintiff seeks damages in excess of $75,000, in addition to interest, costs, and other relief deemed appropriate by the Court. (Compl. ¶¶ 6, 25, 28.)

## II.   STANDARD OF REVIEW

Summary judgment is appropriate where the moving party establishes that "there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law." Fed R. Civ P. 56©. See Levy v. Sterling Holding Co., LLC, 544 F.3d 493, 501 (3d Cir. 2008). A factual dispute between the parties will not defeat a motion for summary judgment unless it is both genuine and material. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); Dee v. Borough of Dunmore, 549 F.3d 225, 229 (3d Cir. 2008). A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit. See Anderson, 477 U.S. at 248; Fakete v. Aetna, Inc., 308 F.3d 335, 337 (3d Cir. 2002).

The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the non-moving party to carry its burden of proof. See Celotex v. Catrett, 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has carried its burden under Rule 56, "its opponent must do more

than simply show that there is some metaphysical doubt as to the material facts." Scott v. Harris, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007). Under Fed. R. Civ. P. 56(e), the opposing party must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations or denials of its pleadings. See Martin v. Godwin, 499 F.3d 290, 295 (3d Cir. 2007).

At the summary judgment stage the court's function is not to weigh the evidence and determine the truth of the matter, but rather to determine whether there is a genuine issue for trial. See Anderson, 477 U.S. at 249; Jiminez v. All American Rathskeller, Inc., 503 F.3d 247, 253 (3d Cir. 2007). In doing so, the court must construe the facts and inferences in the light most favorable to the non-moving party. See Horsehead Indus., Inc. v. Paramount Communications, Inc., 258 F.3d 132 (3d Cir. 2001). The court must award summary judgment on all claims unless the non-moving party shows through affidavits or admissible evidence that an issue of material fact remains. See, e.g., Love v. Rancocas Hosp., 270 F.Supp.2d 576, 579 (D.N.J. 2003); Koch Materials Co. v. Shore Slurry Seal, Inc., 205 F.Supp.2d 324, 330 (D.N.J. 2002).

### III.   DISCUSSION

**A.**   Defendant 's Robert M. Stengel, Esquire's Motion for Summary Judgment

Defendant Stengel seeks summary judgment, pursuant to Fed R. Civ P. 56, and contends that Plaintiff's claim for contribution must fail because: (1) under the standard set forth by Pennsylvania's Uniform Contribution Among Tort-Feasors Act, 42 Pa. C.S. § 8321 ("UCATA"), Plaintiff did not prove that de Luca and Defendant Stengel are joint tortfeasors, and (2) as a matter of law, Plaintiff is unable to show that Defendant Stengel was a proximate cause

of the complained of harm suffered by the Sanfords. The Court will address each of these issues in turn below.

A.1     Joint Tortfeasor Status

In support of his contention that de Luca and Defendant Stengel are not joint tortfeasors, Defendant Stengel notes that the actions of the two attorneys: "a) are severable as to time, b) they did not have the opportunity to guard against the acts of the other, and c) they owed different duties to the Sanfords d) which would require different testimony evidence at trial."

Defendant Stengel asserts that the alleged negligence of de Luca occurred between November 2001 and January 2002, two years after Defendant Stengel's representation of the Sanfords, which ended in October 1999. In 2001, attorney de Luca was hired by the Sanfords' homeowner's insurance company to defend the Sanfords in a Dragonetti law suit, where Township Supervisors filed suit against the Sanfords, alleging the Sanfords' wrongful use of civil proceedings stemming from the Sanfords' filing of the RICO suit against the Supervisors. Attorney de Luca negligently failed to answer the complaint in the Dragonetti suit, and permitted default judgment to be entered against the Sanfords. According to Defendant Stengel, given this two year lapse in time, Defendant Stengel was not in a position to foresee and guard against attorney de Luca's actions in a later, and entirely different law suit.

Additionally, Defendant Stengel contends that differing evidence and testimony would be required at trial for Defendant Stengel's alleged negligence in drafting the 1999 RICO complaint and de Luca's alleged negligence in defending "a later action based on a completely separate legal theory" concerning the Dragonetti Act claim.

Defendant Stengel accurately points out clear distinctions between his representation and de Luca's.  Defendant Stengel counseled and advised the Sanfords on their federal RICO action, which was filed in federal court.  In this matter, the Sanfords were the plaintiffs.  On the other hand, attorney de Luca represented the Sanfords as defendants in a state court case concerning Pennsylvania law.  Defendant Stengel contends that proving his negligence would require testimony and evidence concerning his due diligence prior to and during his counseling of the Sanfords.  Such evidence would include the "legal and factual investigation performed by Stengel, including conversations held with fact witnesses and other attorneys and a review of his file including relevant research."  According to Defendant Stengel, the evidence required to prove de Luca's negligence, based mainly on procedural error, would be wholly dissimilar.  Such evidence would "involve the investigation of the time line of assignment of the Dragonetti case to de Luca, conversations between de Luca and opposing counsel, and a[n] review of de Luca's reasons, if any, for failing to file a timely answer or other pleading in response to the Dragonetti Act complaint."

Furthermore, differing expert testimony would be required to determine whether the applicable standard of care was met by Defendant Stengel or attorney de Luca under the circumstances surrounding each representation.  (Def. Stengel Mot. for Summ. J. 15.)

To support his assertion concerning lack of joint tortfeasor status, Defendant Stengel argues that Voyles v. Corwin, M.D. 441 A.2d 381(Pa. Super. 1982) is applicable.  In Voyles, defendant physicians who treated a motorist injured in an automobile accident wished to bring in the second motorist who caused the accident as a joint tortfeasor.  The Superior Court of

Pennsylvania set forth the following factors for courts to consider in determining whether entities or individuals are joint tortfeasors:

> "[T]he identity of a cause of action against each of two or more defendants; the existence of a common, or like duty; whether the same evidence will support an action against each; the single, indivisible nature of the injury to the plaintiffs; identity of the facts as to time, place or result; whether the injury is direct and immediate, rather than consequential, responsibility of the defendants for the same injuria as distinguished from damnum." Id. at 383.

Additionally, in Voyles, the Superior Court of Pennsylvania made a distinction between cases where the tortfeasors in question are responsible for separate causes resulting in separate injuries, versus situations where the tortfeasors caused the same, indivisible injury. The court states that "[i]f, however, Walker and the physicians are liable for distinct injuries to Voyles, they are not joint tortfeasors."

Plaintiff contends that Defendant Stengel and de Luca should be deemed joint tortfeasors, as they created a single, indivisible injury in the form of the multi-million dollar judgment entered against the Sanfords in the Dragonetti case. In support of its position, Plaintiff relies upon Neal v. Bavarian Motors, Inc., 882 A.2d 1022, 1027-28 (2005) (setting forth factors similar to those layed out in Voyles to be considered by courts in determining whether the tortious conduct of two or more entities or individuals was a legal cause of harm incapable of apportionment) and the following two cases submitted at oral argument: (1) United States v. Sunoco, Inc. et al., 501 F. Supp. 2d 656, (E.D. Pa. 2007) (determining contamination of the United States' land was caused by joint tortfeasors, where each entity produced petroleum leaks which caused the combined, indivisible contamination of such land), and (2) Harsh v. Petroll,

584 Pa. 606, 623 (2005) (finding the car manufacturer of the injured parties' vehicle and the negligent driver causing the car accident to be joint tortfeasors, based on the fact that both the manufacturing defect and the defendant driver's negligence were substantial factors, under the crash worthiness doctrine, which caused the death of the Harsh family members.)  The Court, however, concludes that relevant Pennsylvania common law supports a finding of no joint tortfeasor status in this matter.

UCATA requires that a Plaintiff show the following in order to obtain a right of contribution among joint tortfeasors : (1) two or more persons are found jointly and severally liable in tort, and (2) one of the tortfeasors has paid more than his or her pro rata share of the common liability.  Mattia v. Sears Roebuck & Co., 366 Pa. Superior Ct. 504, 507, 531 A.2d 789, 791 (1987).   UCATA defines a "joint tortfeasor" as "two or more persons jointly or severally liable in tort for the same injury to persons or property, whether or not judgment has been recovered against all or some of them."  42 Pa. C.S. § 8322.

Under Pennsylvania law, "[w]hether liability for harm to a plaintiff is capable of apportionment is a question of law for the court, not a question of fact for the jury." See Lasprogata v. Qualls, M.D., 397 A.2d 803, 806 (Pa. Super. 1979); Voyles at 383 (citing Restatement (Second) Torts § 434).  Furthermore, this Court, in Sunoco, clarifies the UCATA standard, stating that "[u]nder Pennsylvania law, two actors are joint tortfeasors for UCATA purposes if their conduct 'causes a single harm which cannot be apportioned … even though [the actors] may have acted independently.'"  Id. at 661.

Sunoco is instructive, laying out two lines of Pennsylvania cases that deal with the issue of joint tortfeasor status.  Id.  One group of cases, where Pennsylvania courts have found joint

tortfeasor status, are characterized by situations where the cumulative harms inflicted by the tortfeasors created a single, indivisible injury to the plaintiff.[1]  The second line of Pennsylvania cases, where courts have declined to find joint tortfeasor status, are characterized by facts "where the tortious conduct is clearly independent and creates separable injuries."[2]  Specifically, the Sunoco court discusses Lasprogata where the plaintiff, who sustained a fractured femur in a traffic accident, suffered further harm due to the malpractice of his treating physician.  The Pennsylvania Superior Court found that the negligent driver and physician lacked joint tortfeasor status because their acts were separable as to time, neither individual was able to guard against the actions of the other, and each failed to fulfill different duties owed to the plaintiff.  Id. at 805.  The court in Lasprogata stated:

> "Case law specifically holds that a tortfeasor originally causing an injury and a physician who subsequently aggravates or causes a new injury are not joint tortfeasors... to the extent that the acts of the original tortfeasor and those of the physician are capable of separation, the damages should be apportioned accordingly. This apportionment does not necessarily follow the statutory rules for contribution among tortfeasors applicable in situations where such tortfeasors are characterized as joint.  Instead, where identifiable acts of negligence of the original wrongdoer and the negligent physician are

---

[1] See Rabatin v. Columbus Lines, Inc., 790 F.2d 22 (3d Cir. 1986) (finding that a strictly liable equipment manufacturer and a negligent equipment owner were joint tortfeasors, as their separate wrongdoings caused a single harm to plaintiff, who was injured when a piece of equipment broke); Harsh v. Petroll, 887 A.2d 209, 218-19 (Pa. Super. 2005) (finding joint tortfeasor status of negligent car driver and car manufacturer where plaintiff's injuries were considered a single injury caused by both entities); Capone v. Donovan, 480 A.2d 1249, 1251 (Pa. Super. 1984) (concluding that all three doctors that negligently treated plaintiff's broken arm were joint tortfeasors, where the malpractice committed by each led to one permanent disabling injury).

[2] See Foulke v. Dugan, 212 F.R.D. 265, 270 (E.D.Pa. 2002) (stating that "[w]here the pleadings show separate torts, rather than a joint tort, the third-party action must be dismissed", and finding defendant attorney and third party defendant company were not joint tortfeasors, as each owed a different duty to plaintiff at separate times.); Harka v. Nabati, 487 A.2d 432 (Pa. Super. 1985) (declining to find joint tortfeasor status, where defendants, a physician and a negligent driver, were found to owe differing duties to decedent which would involve wholly dissimilar evidentiary problems and legal theories); Lasprogata v. Qualls, 397 A.2d 803 (Pa. Super. 1979) (finding car driver who caused plaintiff's injuries in a motor vehicle accident and physician who negligently treated plaintiff's injuries after the accident were not joint tortfeasors, as a tortfeasor causing an initial injury, and a subsequent tortfeasor who aggravates such injury or causes a new injury, are not to be deemed jointly liable, particularly where their negligent actions were separate in nature and time).

> separate from each other in nature and time, the damages are accordingly apportionable."

Id. The Court holds that Defendant Stengel and de Luca are not joint tortfeasors. Similar to the facts in Harka, Kemper, Foulke, Voyles and Lasprogata, the present case involves an initial injury caused by an original tortfeasor, Defendant Stengel, with such injury being the dismissal of Sanford's complaint which included the RICO claims. The subsequent actions by de Luca, another negligent tortfeasor who did not act jointly with Defendant Stengel, caused a separate and distinct injury that did not naturally flow from the actions of Defendant Stengel.

Furthermore, an examination of the facts at hand using the Voyles factors supports the Court's finding that Defendant Stengel and de Luca are not joint tortfeasors. Defendant Stengel owed a different duty to the Sanfords than did de Luca, as the two attorneys provided different types of counsel in two vastly different actions. Defendant Stengel's counsel involved the Sanford's offensive zoning appeal, and de Luca's counsel involved providing the Sanfords with defense against a Dragonetti Act claim initiated against them. Although Defendant Stengel concedes that he and de Luca both owed the Sanfords the same general duty of care required of practicing attorneys, the tasks associated with fulfilling this general duty were clearly distinguishable. Defendant Stengel's duties involved substantive plaintiffs' counseling concerning the RICO Act, a federal law, and constitutional claims. On the other hand, de Luca's duty concerned Pennsylvania state law, the Dragonetti Act. De Luca's representation was defense-oriented and more procedural in nature. De Luca's duty was breached when he failed to file an answer which resulted in default judgment being entered against the Sanfords.

Because the attorneys' obligations concerning their respective counsel to the Sanfords differed so vastly, as discussed above, it follows that the evidence to support a legal malpractice action against each of the attorneys would also be wholly dissimilar.  For a viable claim against Defendant Stengel, evidence would have to be shown that Stengel failed in his due diligence when he counseled the Sanfords concerning their RICO claims.  Such evidence would focus upon Stengel's research notes as well as notes memorializing his discussions with relevant witnesses, the Sanfords, and experts.  On the other hand, for a claim against de Luca, necessary evidence concerning his legal malpractice would include documents showing the time line of the case, notes memorializing conversations with opposing counsel, and a review of evidence going to show the cause, if any, for de Luca's failure to file an answer when required.

Additionally, the actions of Defendant Stengel and attorney de Luca were severable as to time.  Defendant Stengel's representation of the Sanfords began in 1999, and ended with Defendant Stengel referring the Sanfords to Defendant Berry.  Over two years later, in 2002, de Luca began representation of the Sanfords, which ended when default judgment being entered against the Sanfords due to de Luca's negligence in missing a filing deadline.  Thus, these two acts were not performed in rapid succession, providing further support that joint tortfeasor status is unwarranted.

Defendant Stengel and de Luca's actions were the underlying bases of separate and distinct types of legal malpractice allegations, requiring dissimilar obligations to the Sanfords, with such actions being severable as to time.  Moreover, neither individual was able to guard

against the acts of the other. Defendant Stengel and de Luca could not be found joint tortfeasors by a reasonable person. Accordingly, contribution is inappropriate.

### A.2 Proximate Cause

Concerning his assertion of lack of proximate cause, Defendant Stengel argues that Plaintiff has failed to show that Defendant was a proximate cause of harm to the Sanfords. To support this contention, Defendant Stengel submits that the connection between Stengel's counsel of the Stanfords in 1999 and the default judgment entered against the Sanfords in 2002 was too attenuated to allow Defendant Stengel to foresee the consequences suffered by the Sanfords. Defendant Stengel points out that the $3,030,000 judgment entered in 2007 against the Sanfords in the Dragonetti lawsuit, which resulted from default judgment stemming from the alleged negligent representation by de Luca in 2001 and 2002, was not reasonably forseeable to Defendant Stengel in 1999 when he represented the Sanfords immediately before they filed their RICO action.

Plaintiff incorrectly argues that the issue before the Court is that of factual cause, as opposed to the issue of proximate cause asserted by Defendant Stengel, which Plaintiff contends must be decided by a jury. Pennsylvania law clearly states, as this Court has recognized, that unless the evidence is such that reasonable minds cannot disagree, the question of whether a defendant's conduct is a cause of the plaintiff's injury or loss is for the jury. Fiorentino v. Rappoport, 693 A.2d 208, 217 (Pa. Super. 1997). In the present matter, the Court

holds that reasonable minds cannot disagree on the undisputed facts on the record concerning causation. Thus, it is proper for the Court to evaluate the issue of proximate cause.[3]

The Court agrees with Defendant Stengel, and finds that at the time of Defendant Stengel's representation of the Sanfords concerning their zoning appeals to the Commonwealth Court of Pennsylvania, and their RICO claims against Falls Township and Supervisors, the Dragonetti Act claim against the Sanfords and the default judgment stemming from de Luca's admitted negligence were not foreseeable.

In the Third Circuit, the appropriate analysis concerning causation requires an examination of both cause in fact and proximate cause. Redland Soccer Club, Inc.v. Department of Army of United States, 55 F.3d 827, 851 (3d Cir. 1995). The determination of proximate cause "is a question law, to be determined by the judge, and it must be established before the question of actual cause may be put to the jury." Reilly v. Tiergarten, Inc., 633 A.2d 208, 210 (Pa. Super. 1993) (citing Novak v. Jeannette Dist. Mem. Hosp., 600 A.2d 616, 618 (Pa. Super. 1991).[4] Proximate cause requires a court "to determine whether the defendant's

---

[3] The Court declines to consider the opinion of Plaintiff's expert Mr. Walter Weir, Jr., as it relates to the legal issue of causation. The court enjoys wide discretion concerning the permissibility of expert testimony. Pennsylvania law and the Federal Rules of Evidence dictate that expert opinion may be used to assist in evaluating factual questions, but shall not usurp the role of the Court in determining questions of law. See Whitmill v. City of Philadelphia, 29 F. Supp.2d 241, 247 (E.D.Pa. 1998); Haberern v. Kaupp Vascular Surgeons LTD, 812 F. Supp. 1376, 1378 (E.D.Pa. 1992).

[4] Contrary to Plaintiff's contention that this court stated in it's Order, filed November 3, 2008 (Doc. 21) that proximate cause is a question for the jury, here the Court notes that presently, it is tasked with determining whether there remains any genuine issue of material fact at the summary judgment phase. Earlier in the litigation, upon consideration of Defendants' motion to dismiss, the Court did not have the depth of information currently on the record, including but not limited to transcripts of expert Mr. Weir's depositions and testimony and arguments offered during oral arguments. Thus, the Court's disposition concerning proximate cause at the summary judgment phase is appropriate, and is based upon the entire record to date. Moreover, the Court's November 3, 2008 Order, states, in pertinent part, that "Plaintiff further argues that *unless the evidence is such that reasonable minds cannot disagree*, the question of whether a defendant's conduct is a cause of the plaintiff's injury or loss is for the jury." Fiorentino v. Rapoport, 693 A.2d 208, 217 (Pa. Super 1997). This Court agrees. (emphasis added.) Presently, based on the more extensive record before the Court, the Court finds that reasonable minds cannot disagree that Defendant Stengel's actions were *not* a proximate cause of the judgment entered against the Sanfords, for the reasons discussed above.

negligence was so remote that, as a matter of law, he cannot be held liable for the harm which subsequently occurred." Redland at 851 (citing Bell v. Irace, 619 A.2d 365 (Pa. Super. 1993).

The legal definition of "proximate cause" is "[t]hat which, in a natural and continuous sequence, unbroken by any sufficient intervening cause, produces injury, and without which the result would not have occurred." Wisniewski v. Great Atl. Pac. Tea. Co., 323 A.2d 744, 748 (Pa. Super. 1994).  Pennsylvania courts have followed Prosser's analysis of proximate causation, which states that the question of proximate cause

> "becomes essentially a question of whether the policy of the law will extend the responsibility for the conduct to the consequences which have in fact occurred. Quite often this has been stated, and properly so, as an issue of whether the defendant is under any duty to the plaintiff, or whether his duty includes protection against such consequences."

W. Prosser, Law of Torts § 42, at 244 (4th ed. 1971).  Based on Prosser's formulation of proximate cause, Pennsylvania courts have included an requirement of foreseeability when engaging in the inquiry of legal causation.  See Bell v. Irace, 619 A.2d 365, 367 (Pa. Super. 1993) (quoting Mazzagatti v. Everingham, 516 A.2d 672, 676 (Pa. Super. 1986).  In Fiorentino, the Superior Court of Pennsylvania states that "...a defendant will not be found to have had a duty to prevent a harm that was not a reasonably foreseeable result of the prior negligent conduct. The rationale behind this rule is that it would be unfair to impose a duty upon persons to prevent a harm that they could not foresee or avoid." See  Fiorentino v. Rappoport, 693 A.2d at 217; McPeake v. William T. Cannon, Esquire, P.C., 553 A.2d 439 (Pa. Super. 1989).

The Court agrees with Defendant Stengel's position concerning proximate cause. From 1998 through 1999 when Defendant Stengel represented the Sanfords concerning their zoning appeal, federal RICO claims and constitutional law claims, he could not have foreseen the state Dragonetti Act claim that ensued in 2002, nor could he have foreseen the distinct and separate injury of the $3,030,000 in damages awarded against the Sanfords five years later in 2007 stemming from the procedural error committed by de Luca, an attorney with no connection to Stengel.

In counseling the Sanfords, Defendant Stengel advised the Sanfords about their appeal of the Falls Township zoning decision, and provided assistance with the drafting of a complaint on behalf of the Sanfords which included, *inter alia,* a federal RICO cause of action against members of the Falls Township Board of Supervisors. After Stengel withdrew his representation of the Sanfords, the Sanfords filed the RICO complaint *pro se.* Afterward, the Sanfords were represented by two additional attorneys, Kevin Berry in 1999 and de Luca from 2001 through 2002, prior to having default judgment entered against them in 2002 and a large award entered against them in 2007.

Defendant Stengel's brief representation of the Sanfords started at the very beginning of the chain of events, nine years prior to the $3,030,000 in damages awarded against them. He could not have foreseen the large monetary judgment that would befall the Sanfords as a result of a third attorney's legal malpractice on non-substantive issues. There is no indication anywhere in the evidence that Defendant Stengel knew or should have known that his legal advice and drafted complaint on behalf of the Sanfords lacked probable cause and might result in a Dragonetti Act claim being filed against the Sanfords. Thus, the Court finds that Defendant

Stengel was not the proximate cause of the judgment entered as a result of the Dragonetti suit against the Sanfords.

  B. <u>Defendants Ledgewood Law Firm, P.C. and Kevin Berry, Esquire - Motion for Summary Judgment</u>

  The Court also grants summary judgment in favor of the Ledgewood Defendants. The <u>Voyles</u> factors weigh in favor of a finding that the Ledgewood Defendants and attorney de Luca were not joint tortfeasors, and thus contribution is inappropriate. The Ledgewood Defendants were similarly situated to Defendant Stengel, in that the Ledgewood Defendants' representation of the Sanfords, which occurred in 1999, was severable as to time from de Luca's representation in the Dragonetti suit from 2001 through 2002, and the resulting default judgment and damages award entered against the Sanfords in 2007. Additionally, the Ledgewood Defendants were incapable of guarding against de Luca's subsequent procedural negligence, as undisputed evidence on the record shows that the Ledgewood Defendants merely amended the complaint drafted by Defendant Stengel, and did so based on good faith diligence and legal research. Lastly, the Ledgewood Defendants, in amending the Sanfords' complaint, held differing obligations to the Sanfords concerning the federal claims asserted in the RICO suit than did de Luca in his defense representation of the Sanfords against the Dragonetti claims. These very different representations would also require dissimilar evidence to prove a breach of duty, as discussed previously. Thus, the Court concludes that the Ledgewood Defendants and de Luca are not joint tortfeasors.

  Concerning the issue of proximate cause, for the reasons set forth above concerning Defendant Stengel, the Court holds that the Ledgewood Defendants were not the proximate

cause of the judgment entered against the Sanfords in the Dragonetti suit. The Ledgewood Defendants, who merely assisted the Sanfords in filing an Amended Complaint in their RICO lawsuit against Falls Township, the Township Solicitor, the Zoning Hearing Board, and members of the Township's Board of Supervisors, were incapable of foreseeing that two years thereafter, a Dragonetti action against the Sanfords would ensue in which attorney de Luca would fail to follow procedure, causing the Sanfords to lose the Dragonetti suit on non-substantive issues. The Court finds no evidence supporting a breach of the standard of care required of attorneys during the Ledgewood Defendants' representation of the Sanfords, such that a subsequent Dragonetti Act claim would be foreseeable by the Ledgewood Defendants.[5] To the contrary, the record reflects that the Ledgewood Defendants sufficiently pled all claims included in the RICO suit in a good faith manner supported by reasonable diligence. Thus, the Ledgewood Defendants were not the legal cause of the judgment entered against the Sanfords in the Dragonetti Act. A portion of this $3.03 million judgment, was paid out by Plaintiff in settlement on behalf of its insured, de Luca, who admitted his own procedural negligence was the cause of such judgment, and that there existed meritorious defenses to the Dragonetti Act that were never presented to the court due to the entry of default judgment. (De Luca Deposition, 33:3-35:19.)

The Court finds that there are no genuine issues of material fact concerning the issues of: (1) joint tortfeasor status of the Ledgewood Defendants and attorney de Luca, and (2) proximate

---

[5] The Court declines to address the argument submitted by the Ledgewood Defendants, and countered by Plaintiff, that in order to prove the Ledgewood Defendants' negligence, Plaintiff must show that all claims asserted in the RICO amended complaint lacked probable cause. It is unnecessary to address this assertion, as the Court finds that the Ledgewood Defendants' actions were too attenuated, and interrupted in the causal chain by de Luca's procedural negligence, to be considered the legal cause of the judgment entered against the Sanfords.

cause as it relates to the Ledgewood Defendants. Thus, as a matter of law, summary judgment must also be granted to the Ledgewood Defendants.

### IV.     CONCLUSION

Based on the evidence provided, and the circumstances surrounding the Defendants' representation of the Sanfords, this Court concludes that there is no genuine issue of material fact in this matter and Defendant Stengel and the Ledgewood Defendants are entitled to judgment as a matter of law.

An appropriate Order will be entered in accordance with this memorandum opinion.

**BY THE COURT**:

**/s/ Petrese B. Tucker**

_____
**Hon. Petrese B. Tucker, U.S.D.J.**